## LOWE ET AL. *v.* TALBERT.

[No. 13,891.   Filed April 30, 1931.   Rehearing denied August 13, 1931.   Transfer denied November 24, 1931.]

*V. E. Livengood, Forrest E. Livengood, R. T. Livengood, Edwin F. McCabe* and *Edward L. McCabe,* for appellants.

*W. N. White* and *C. W. Dice,* for appellee.

WOOD, J.—This was an action brought by the appellee, Sarah J. Talbert, surviving widow of one David Talbert, deceased, against the appellants, Charles F. Lowe, George Lowe and Rebecca Wilson, to set aside an alleged will of the said David Talbert, upon the ground of unsoundness of mind and undue execution. The cause was submitted to a jury for trial, a verdict was returned in favor of appellee, upon which judgment was rendered, setting the will aside. Motion for a new trial was overruled.

Appellants have appealed to this court. While they set out in their assignment of errors four alleged specifications of error, number two, to the effect that the trial court erred in overruling appellants' motion for a new

trial, is the only one of the four properly assigned and recognized as appropriate under our appellate procedure. Ewbank's Manual (2nd ed.) §133. In fact, this is the only error discussed in their brief.

Counsel for appellee question the sufficiency of appellants' brief to properly present the errors relied upon for reversal as required by the rules of this court. Appellants' brief, as supplemented by appellee's brief, is sufficient to present to the court for its consideration the issues involved in this appeal.

In their first proposition, the appellants assert that, in order to make a case entitling her to recover, it was incumbent upon appellee to introduce the alleged will, together with the probate thereof, in evidence; that appellee failed to do so, and, for that reason, the verdict of the jury is not sustained by sufficient evidence, hence this cause must be reversed. On behalf of appellee, the contention is made that the will was in evidence, and that it was not necessary to introduce the probate of the will in evidence in a case where its validity was contested, upon the issues as here presented. Our Supreme Court, in the case of *Curry* v. *Brantney* (1867), 29 Ind. 195, held, in a case such as we have here, that it was not necessary for the contestor of a will to introduce the probate thereof in evidence in order to sustain a verdict. This opinion has been cited by our courts on several occasions, and it seems never to have been questioned.

We are convinced, after an examination of the record and the briefs of counsel, that the final determination of this cause depends upon the question whether or not the alleged will of David Talbert, deceased, was offered and admitted in evidence, so that it could be considered by the jury, on the trial of the cause, in arriving at its verdict.

We have no statute in this state prescribing the

method or manner of offering and introducing written documents in evidence in the trial of contested ▮ actions. It, therefore, becomes necessary to look to the decisions of the courts for the rules of practice prevailing in such instances. From an examination of the authorities, it is evident that the courts have never announced a definite method of procedure to be followed, but whether a written document is in evidence for consideration by the court and jury must be determined from the facts and circumstances of each case.

The editor, in 14 Ency. of Evidence, at p. 731, states the rule thus: "A formal offer of a writing in evidence has not been regarded by the courts as necessary in all cases; it seems to be sufficient if the parties treat it as in evidence, though the better practice is to make a formal offer."

The case of *Harter* v. *Seaman* (1832), 3 Blackf. (Ind.) 27, is quite similar to the case at bar. It was an action of trespass on the case, issues were joined, and a trial by jury was had. We quote from the opinion of the court: "It appears of record by a bill of exceptions, that the plaintiff produced as a part of his evidence, a number of receipts which he duly proved, but did not at that time read them; but that, afterwards, his counsel read them to the jury in his closing argument; to which the defendant objected, because they had not been before read, but the objection was overruled." In disposing of this question, the Supreme Court said: "The first question is, whether the Court erred in permitting those receipts to be read in the closing argument, they not having been before read. We cannot, from anything that appears of record, say that there was any error in this. The mere circumstance of the receipts not having been before read, was not sufficient to exclude them, if there was no trick or fraud practiced on the defendant.

If the receipts were produced in court as part of the evidence, and were duly proved and laid on the table, either party had a right to read them when they pleased; they being part of the evidence to go with the jury in their retirement." This is one of the clearest and most concise statements of the rule we have been able to find, is in complete harmony with the courts of other states, and, although this opinion was announced almost 100 years ago, it has never since been overruled, limited or modified, as to this particular point.

In the case of *Bevington* v. *State of Ohio* (1853), 2 Ohio St. 160, the appellant was prosecuted for having counterfeit bills in his possession. To prove the issue, the prosecuting attorney produced sundry bank notes; these were put into the hands of witnesses upon the stand in the presence of the jury; they were laid on the table, handled and inspected by counsel for the defendant and the State, in the presence of the jury. Some of the bank notes were passed by witnesses while upon the witness stand into the hands of some of the jurors. The notes were in no other or different manner offered in evidence, or read to the jury during the trial. Counsel for the defendant asked the court to instruct the jury that the bank notes were not in evidence before them. This the court refused to do, but the court did instruct the jury that the bank notes were in evidence. For the giving of this instruction the defendant assigned error. The higher court, in disposing of this alleged error, said: "The court below was clearly correct in its instructions to the jury upon the first point. When an instrument in writing is produced by a party on a trial as evidence, and witnesses examined in relation to it, without objection to its admissibility from the other side, it is not error for the court to regard it as in evidence, although not formally offered and read by the party

producing it." This opinion was quoted and followed in the case of *Zieverink* v. *Kemper* (1893), 50 Ohio St. 208, 34 N. E. 250.

In the case of *Cothron* v. *Ellis* (1888), 125 Ill. 496, 16 N. E. 646, suit was brought on a promissory note. It was contended on appeal that the note was not in evidence. Addressing itself to this contention, the court said: "We do not think there is anything in the point that the note sued on was not formally read to the jury. . . . The note was present in court, and was identified in the presence of the jury, and its amount stated, and there is no claim, in the pleadings or otherwise, that anything was ever paid upon it. This, we think, was sufficient to warrant the jury in assessing the damages at the face of the note, with interest, as they did."

This method of procedure was again approved by the Supreme Court of Illinois in the case of *McChesney* v. *City of Chicago* (1894), 152 Ill. 543, 38 N. E. 767, which was a petition by the city of Chicago for the confirmation of a special assessment, the court saying: "The contention of counsel for appellants that neither the ordinance, the report of commissioners nor the assessment roll were introduced in evidence is, we think, without force. It does not appear that they were formally offered in evidence, but they were all before the court, and were so treated by appellants."

*Convery* v. *Conger* (1891), 53 N. J. Law 468, 22 Atl. 43, involved an election contest. The appellant did not claim that the box and ballots were inadmissible as evidence, but that, in fact they were not put in evidence. The court said: "I think the record plainly manifests that they were put in evidence. When they were produced to and inspected by the justice as facts to be considered by him, and witnesses were examined whose testimony was unintelligible unless they were so con-

sidered, they were necessarily made evidence. As well might a party say that the testimony of a witness, whom he has called and sworn and examined, is not in evidence, as to say that a document, which he has proved and submitted as a fact to those who are to pass upon the facts, is not in evidence. His conduct has put it in evidence, and, if he repents, he can only seek permission to withdraw it." In the case of *Charles* v. *Patch* (1885), 87 Mo. 450, the court expressed itself thus: "As to the objection that the plat was not offered or introduced in evidence, it may be a little difficult from the record to determine whether that was so or not; or in other words to decide what it takes to constitute an introduction in evidence within the meaning of that term. From the record it appears that the plat in question was shown and handed the witness, McCoy, who was standing in the presence of the court and jury and pointing out and showing the location thereon of the lot or land in question. If this was done in the presence and sight of the triers of fact, can it be said that it was not introduced in evidence, within the meaning of the law? Or must it be held that in addition to this the plat must be formally handed or given to the jury for their inspection when not so requested by them. From the record as to what was thus done we are hardly authorized to say that the said plat was not in evidence within the rule and the usual practice of trial courts in such cases."

Substantially the same method of procedure was approved by the Supreme Court of California in the following cases: *Landers* v. *Bolton* (1864), 26 Cal. 393; *Pearson* v. *Pearson* (1873), 46 Cal. 609; *Wright* v. *Roseberry* (1889), 81 Cal. 87, 22 Pac. 336. See, also, *Myers* v. *Kingston Coal Co.* (1889), 126 Pa. 582, 17 Atl. 891.

It appears from an examination of the record in this case, that during the trial, the will was identified as an

exhibit in the case, was offered to and inspected by the jury, that witnesses were examined concerning the execution of the will by the testator, that, while giving their testimony, they had the will before them, identified it in the presence of the jury, and, exhibiting the will, explained to the jury certain matters regarding the signature of David Talbert, and, in its instructions to the jury, the court frequently referred to the will. These transactions all occurred without any objections being made on behalf of appellants. Applying to this record the same rules adhered to in the above cases, we conclude that the will was in evidence. This result renders it unnecessary for the court to give further consideration to the proposition that, in order to sustain appellee's case, it was necessary for the alleged will of the decedent to be introduced in evidence before the court and jury. We do not, therefore, express an opinion upon that question.

Appellants complain of several rulings of the trial court, on the admission and exclusion of evidence, and the giving and refusal to give certain instructions. The bill of exceptions containing the evidence, has therein, this recital: "And this was all the evidence given in said cause." The bill of exceptions, however, does not contain a copy of the will, so it is very manifest that *all* the evidence is not properly in the record. Such being the condition of the record, this court will presume that the rulings of the trial court on the admission and exclusion of evidence were proper and, "the instructions given by the court, in the absence of the evidence, cannot be regarded as erroneous, if they can be considered correct upon any state of facts admissible under the issues."

However, an examination of all the instructions given convinces us that, in reading them to the jury, there was no error committed, prejudicial to appellants. *Consoli-*

dated *Stone Co.* v. *Summit* (1899), 152 Ind. 297, 53 N. E. 235; *Thorne* v. *Indianapolis Abattoir Co.* (1898), 152 Ind. 317, 52 N. E. 147; *Westervelt* v. *National Paper, etc., Co.* (1900), 154 Ind. 673, 57 N. E. 552; *South Bend, etc., Co.* v. *Geidie* (1900), 24 Ind. App. 673, 57 N. E. 562; *Standley* v. *Cleveland, etc., R. Co.* (1905), 36 Ind. App. 381, 75 N. E. 674; *Cincinnati Seating Co.* v. *Neiry* (1907), 40 Ind. App. 144, 81 N. E. 216; *Kirmse* v. *Chicago, etc., R. Co.* (1920), 73 Ind. App. 537, 127 N. E. 837; *Citizens Nat. Bank* v. *Reynolds* (1920), 72 Ind. App. 611, 126 N. E. 234; *Souers* v. *Zeigler* (1920), 73 Ind. App. 87, 126 N. E. 483; *Wolf Hotel Co.* v. *Parker* (1927), 87 Ind. App. 333, 158 N. E. 294.

This cause was submitted on July 10, 1929. The death of appellee, Sarah J. Talbert, is suggested to have occurred after that date. The judgment is, therefore, affirmed as at the term at which the cause was submitted, pursuant to the provisions of §729 Burns 1926.

Finding no error, the judgment is affirmed.

## ON PETITION FOR REHEARING.

WOOD, J.—Appellants have filed their petition for a rehearing of this cause. In support thereof they have filed a forceful, insistent and ingenious brief.

Appellants direct the most of their brief to an attack upon instruction No. 9 of the instructions tendered by appellee and read to the jury by the court upon the trial of this cause. The instruction is as follows: "I instruct you further that if you find by a fair preponderance of the evidence in this case that David Talbert, at the time his alleged will was executed, lacked mental capacity necessary to make a will, as defined in these instructions, then it will be your duty to find for the plaintiff in this case. *It is not necessary for the testator to be lacking in all the elements necessary*

*to testamentary capacity in order that his will shall be void.* (Our italics.) Complaint is made especially of the portion thereof italicized. The court read to the jury 48 separate instructions, thereby covering the law on each phase of the case. By instruction No. 5 tendered by appellee, and read to the jury, and of which no complaint is made, the jury was told that: "Persons are regarded as having sufficient mental capacity to make a will when they have mind and memory enough to know and grasp, at the time of making the will, the extent and value of their property, the number and names of those who are the natural object of their bounties, their deserts with reference to their conduct towards them, their capacities and necessities, and to retain these facts in their memory until a will is executed." In instruction No. 13 tendered by the appellee and read to the jury, it was told that the court had not attempted to embody all the law in the case in any one instruction, and that in construing any single instruction, it should be considered in connection with all the other instructions given and in harmony therewith. There is no complaint made of this instruction. We said in our original opinion, and still adhere to that statement, that an examination of all the instructions given, when considered together, fails to disclose that they were prejudicial to appellants.

An examination of instruction No. 9 does not warrant the construction which appellants seek to have this court place upon it, nor do the authorities which they cite sustain them. The jury was told that if it found by a fair preponderance of the evidence that, at the time of executing his alleged will, the testator lacked mental capacity, necessary to make a will, as defined in the instructions, then it could find for the plaintiff (appellee). The court was not instructing on the question of unsoundness of mind in general, but was

calling attention of the jury specifically to mental capacity to make a will as explained in other instructions. Then the court further explained that it was not necessary for it to find that the testator was lacking in all the elements necessary to testamentary capacity in order to make his will void. That is to say, that if the jury found that the testator was lacking in one or more of the essential elements constituting testamentary capacity, then it would be justified in setting aside the will. It is not the law that the testator may make a valid will if he possesses one, two or three of the essentials of testamentary capacity, but he must possess all of them, they are not stated in the disjunctive but in the conjunctive, and if one of them is lacking to such a degree that it incapacitates him in the making of his will, then the will would not be valid. *Bundy* v. *McKnight, Exr.* (1874), 48 Ind. 502; *Lowder* v. *Lowder* (1877), 58 Ind. 538; *Lamb* v. *Lamb* (1886), 105 Ind. 456, 5 N. E. 171; *Cline* v. *Lindsey* (1887), 110 Ind. 337, 11 N. E. 441; *McReynolds* v. *Smith* (1909), 172 Ind. 336, 86 N. E. 1009; *Crawfordsville Trust Co.* v. *Ramsey* (1912), 178 Ind. 258, 98 N. E. 177. Furthermore, if the appellants desired a more specific instruction, it would undoubtedly have been given if tendered.

Complaint is also made of instruction No. 7, tendered by appellees and read to the jury. We do not think the court committed reversible error in giving this instruction.

In the case of *Cline* v. *Lindsey, supra,* Zollars, J., in affirming a case where it was held that an instruction was erroneous, expressed the opinion of our Supreme Court in this language: "It is settled by a long line of decisions by this court, that in civil cases all of the instructions given should be considered together, and in connection with each other, and that if, thus considered, the law of the case is correctly stated, and the case is

fairly and intelligently presented to the jury, the judgment will not be reversed because any one of the instructions, taken alone, may not be sufficiently full, or may contain incorrect statements. . .

"The record in no way shows that such insane delusions, etc., if any there were, did not prompt the will and enter into it. If they did, upon appellants' theory of the law, the will was invalid, and they were not injured by the instructions. As we have before said, it must affirmatively appear by the record, not only that error intervened, but also that the party complaining was, in fact or presumably, injured by the error. But it cannot be correctly said, that taking all of the instructions together, the case was placed before the jury as contended by counsel. It is not stated in any instruction, that if the testator was laboring under insane delusions which did not at all prompt, enter into, or affect his will, the will would be invalid."

Petition for rehearing overruled.