Wilbur CAREY, Appellant (Defendant below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 2–1278A438.

Court of Appeals of Indiana, Fourth District.

May 17, 1979.

James A. Neel, Davis Neel & Headlee, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen. of Indiana, Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee.

YOUNG, Judge.

The appellant, Wilbur Carey, was found guilty of possession of a narcotic drug, heroin, in violation of the Indiana Uniform Controlled Substances Act, IC 1977, 35–48–4–6. He appeals the trial court's refusal to permit questioning of the arresting officer, called as a witness by the defense, either directly or indirectly as to the identity of the confidential informant on whose information a search warrant was issued.

■ The State urges that Carey has waived this issue by his mistaken characterization of the questions as cross-examination. We do not think this mistake was material. Both the motion to correct errors and the appellant's brief on appeal clearly indicate the facts constituting the alleged error. No one was misled.

■ The general rule regarding disclosure of confidential informants' identities is that policy prevents it, unless disclosure is relevant and helpful to the defense of an accused or is necessary for a fair determination of the cause. *Roviaro v. United States* (1957), 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639. In *Glover v. State* (1969), 253 Ind. 121, 251 N.E.2d 814, as explained in *McCulley v. State* (1971), 257 Ind. 135, 272 N.E.2d 613, the Indiana Supreme Court established the rule that when the State introduces hearsay evidence from a confidential informant which the jury can consider in determining the guilt or innocence of the accused, the State has opened the door to the identity of the confidential informant. In *McCulley*, the court found that testimony that surveillance was undertaken as a result of an informant's tip did not require disclosure of the informant's identity, because that evidence did not bolster the prosecution's case with regard to any matter in issue.

■ Carey argues that the State opened the door in this case by introducing into evidence the search warrant and supporting affidavit, by the authority of which he was searched. His conviction is based on the heroin found in his pockets at that time. The supporting affidavit includes statements of a confidential informant that he had been present in the appellant's house a few days prior and that the appellant was keeping and selling drugs at that time. The presentation of this statement to the jury clearly would require disclosure of the informant's identity under the *Glover-McCulley* rule. However, the record before us does not indicate that this statement was made known to the jury.

■ Carey's trial included a continuing disagreement between the prosecution and defense whether the documents were admitted as a general exhibit or for a limited purpose. The prosecution clearly intended that the documents serve only as evidence that the search by which the heroin was found was a lawful one.[1] By way of foundation, the affiant-arresting officer identified the documents, making no mention of their contents. The prosecution then formally offered them as State's exhibits, to which the defense objected on the bare assertion that they were inadmissible. The defense declined the trial judge's invitation to expand on this objection, whereupon the judge overruled the objection. The prosecution then stated that the documents were offered for limited purpose, but the defense objected on the grounds that the documents were already in evidence as a general exhibit. The judge stated, ambiguously, that they were in evidence. Nevertheless, the prosecution apparently chose to treat the

---

1. Ironically, this was unnecessary. The lawfulness of the search relates only to the admissibility of evidence secured pursuant to the search, which is a question for the court, not the jury. *Clark v. State* (1978), Ind.App., 379 N.E.2d 987, 988–89. Thus, the documents need not and should not be offered at all.

exhibits as admitted for a limited purpose. The documents were neither read aloud to the jury, summarized for their benefit, nor given to the jurors that each might read them himself. At the close of the State's case and in the course of responding to Carey's motion for judgment on the evidence, the prosecution again raised the issue. Stating that the documents were offered for the limited purpose of showing the lawfulness of the search and were in fact used for that sole purpose, the prosecution pointed out that the jury had neither heard nor viewed the contents. The trial judge responded only by overruling Carey's motion for judgment on the evidence. The defense then called, as its own witness, the arresting officer on the basis of whose testimony the documents were admitted into evidence. The officer was given the documents which he identified as the same he had identified earlier. The defense then requested the officer to read the probable cause affidavit to the jury. The prosecution objected on the grounds that it was offered for a limited purpose. The trial court resolved prior ambiguity by overruling the objection. However, notwithstanding permission to disclose the contents of the affidavit, the defense did not repeat its request to the officer that he read the affidavit out loud. Instead, defense asked if there were mention in the document of an informant. Until this moment, the word had not been uttered in the presence of the jury. Upon the officer's response, "yes," the defense asked the name of the informant. The prosecution objected. Upon the objection being sustained, the defense asked the officer to explain the three prior incidents in which the informant had given reliable information. Again, the prosecution objected and was sustained. Some discussion was entered into regarding an offer to prove. The defense requested that it be made later so that the jury need not be sent out at that time, to which the trial judge consented. The prosecution declined cross-examination and the defense rested. Our record ends after Carey's second motion for judgment on the evidence was overruled. If the jury ever was informed of the contents of the affidavit, it must have occurred during proceedings not included in the record before us. However, we cannot speculate as to what a more complete record might have revealed. *Sekerez v. Lake County Bd. of Comm'rs* (1976), Ind.App., 358 N.E.2d 140, 143. Rather, we must infer that the record before us omits nothing favorable to the appellant, since it is his duty to present a proper record reflecting the facts on which alleged error is based. *Bryant v. Owens* (1953), 232 Ind. 237, 111 N.E.2d 804, 806; *Fort Wayne v. Bishop* (1950), 228 Ind. 304, 92 N.E.2d 544. *See also State v. Hancock Superior Court* (1979), Ind., 383 N.E.2d 1042; *Chustak v. Northern Ind. Public Service Co.* (1972), 259 Ind. 390, 288 N.E.2d 149. We must presume then that the statement of the confidential informant included in the affidavit was never disclosed to the jury.

Carey argues that because the affidavit was *formally* admitted into evidence as a general exhibit, the State opened the door with respect to the confidential informant regardless of whether that informant's statement was made known to the jury. We disagree.

We perceive a distinction between "evidence" as a broad term, defined as "that which tends to produce conviction in the mind as to the existence of a fact," *Taylor v. Fitzpatrick* (1956), 235 Ind. 238, 132 N.E.2d 919, 922, and items which are "*in* evidence." The latter implies an official proceeding for the purpose of determining the truth of a matter. Items offered as proof in the course of the proceedings are admitted "into evidence" if deemed eligible according to rule, and on the basis of items so admitted the trier of fact makes its determination.

Dean McCormick describes the procedure for presenting documentary evidence as follows:

The party wishing to introduce any sort of evidence of this type should first have the thing marked by the clerk for identification as an exhibit for the party. Having had the thing marked by the clerk for

identification as an exhibit, the proponent should "lay the foundation" for its introduction as an exhibit by having it appropriately identified or authenticated by the testimony of a witness who is qualified to identify or authenticate it.

Next, the proposed exhibit should be submitted to the opposing attorney for his inspection, at least upon his request, and then the proponent should present it to the judge, stating, e. g., "Plaintiff offers this (document or object, describing it), marked, 'Plaintiff's Exhibit No. 2' for identification, as Plaintiff's Exhibit No. 2." At this point, the opponent may make his objection to its receipt in evidence, and the judge will make his ruling upon the objection. Assuming the judge rules that the thing will be accepted in evidence, if it is a writing, it may be read to the jury by the counsel offering it or by the witness, or if it is a thing it may be shown, or passed, to the jury, in the discretion of the judge or in accordance with local custom or rules, for inspection by the jury.

W. McCormick, Evidence, § 51 (2d ed. 1972).

■ Whether an item has indeed been admitted into evidence, so that it can be considered by the trier of fact in arriving at its verdict, must be determined from the facts and circumstances of each case. *Lowe v. Talbert* (1931), 93 Ind.App. 384, 176 N.E. 36, 37. In *Lowe*, the court analyzed a number of decisions in order to determine what circumstances may indicate that an item has in fact been admitted into evidence. In *Bevington v. Ohio* (1853), 2 Ohio St. 160, it was held that bank notes were in evidence, notwithstanding that they were neither formally offered nor read to the jury, because witnesses had been examined as to the contents and some jurors had been permitted to inspect them. In *Cothran v. Ellis* (1888), 125 Ill. 496, 16 N.E. 646, 652, it was held that a promissory note was in evidence although it was not formally read to the jury

because it "was present in court, and was identified in the presence of the jury, and its amount stated . . . ." In *Convery v. Conger* (1891), 53 N.J.Law 468, 549, 22 A. 43, 44, ballots were held to be in evidence because "they were produced to and inspected by the justice as facts to be considered by him, and witnesses were examined whose testimony was unintelligible unless they were so considered . . . ." In addition, the court in *Lowe* discussed *Harter v. Seaman* (1832), 3 Blackf. 27, a case somewhat similar to this at bar. In *Harter*, a number of receipts were produced and authenticated but not read in the course of trial until final argument. The court in *Harter* held there was no error in permitting counsel to read the receipts during final argument:

> The mere circumstance of the receipts not having been before read, was not sufficient to exclude them, if there was no trick or fraud practiced on the defendant. If the receipts were produced in Court as part of the evidence, and were duly proved and laid on the table, either party had a right to read them when they pleased; they being part of the evidence to go with the jury in their retirement.

3 Blackf. at 27–28. *Harter* is not dispositive of the case before us, as it is no longer the rule that all exhibits as a matter of course are taken with the jury upon its retiring to deliberate. On the contrary, it is error to permit it. *Thomas v. State* (1972), 259 Ind. 537, 289 N.E.2d 508, 509.[2] However, it is of value in that it further demonstrates what circumstances indicate that an item is "in evidence." The court in *Lowe*, considering *Harter* and the above-mentioned cases, found that the item in question, a will, was in evidence:

> It appears from an examination of the record in this case, that during the trial the will was identified as an exhibit in the case, was offered to and inspected by the jury, that witnesses were examined

---

**2.** A jury may request that testimony or documents be read to them if, after retirement for deliberation, there is disagreement as to the testimony or document. *Ortiz v. State* (1976), 265 Ind. 549, 356 N.E.2d 1188, 1197. This is

not the same as the general procedure giving rise to the presumption in *Harter v. Seaman, supra,* since it is not of such universal occurrence that we may presume it happened absent some indication in the record.

concerning the execution of the will by the testator, that while giving their testimony they had the will before the, identified it in the presence of the jury, and, exhibiting the will, explained to the jury certain matters, regarding the signature of David Talbert, and, in its instructions to the jury, the court frequently referred to the will. These transactions all occurred without any objections being made on behalf of appellants. Applying to this record the same rules adhered to in the above cases, we conclude that the will was in evidence.

93 Ind.App. 384, 176 N.E. at 38.

One circumstance common to *Lowe* and the cases cited therein is that the item in question in each was in some manner made known to the trier of fact, if not by being formally read or handed to the jury for inspection, then by means of witnesses who testified as to the substance of the items. In *Harter*, it was presumed that the jury would examine the receipts upon retiring with them. Also, these cases demonstrate that the question of formal admission may not be dispositive. *See Haskett v. Haskett* (1975), Ind.App., 327 N.E.2d 612, 617.

It appears to us that the essential test is whether the trier of fact was free to consider the item in making its findings. *See* D. Flanagan, F. Wiltrout, & F. Hamilton, Indiana Trial and Appellate Practise, § 1937 (1952). Fundamental to this is the necessity of making the item known to the trier of fact. Carey would have us find that notwithstanding the jury had no intimation that a damaging statement existed much less its substance, because the trial judge formally admitted the document including it as a general exhibit, the statement was in evidence and the State thereby opened the door to disclosure of the informant's identity. This elevation of form over substance is not required of us.

The document containing the informant's statement might have been used as a general exhibit, but was not. In spite of the trial court's permission to disclose the whole content to the jury, the content was not so disclosed. On the basis of the record before us, the sum of the jury's knowledge respecting the document was that it was a search warrant mentioning an informant who on three prior occasions had given reliable information. The evidence, therefore, was *de facto* limited to the sole purpose of showing that the search in question was lawful: the statement of the informant was not "in evidence." *Accord, King v. Andrews* (1868), 30 Ind. 429.

Considering only that relating to the informant which indeed was in evidence, we are guided by *McCulley* in finding no error. The trial court properly refused to permit disclosure of the informant's identity.

Affirmed.

CHIPMAN, P. J., and MILLER, J., concur.