GLOVER *v.* STATE OF INDIANA.

[No. 169S17. Filed November 6, 1969. No petition for rehearing filed.]

*Owen M. Mullin, Frederick J. Graf,* Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Hassett,* Deputy Attorney General, for appellee.

ARTERBURN, J.—Appellant was charged by affidavit with first degree burglary pursuant to Burns' Ind. Stat. Anno. § 10-701 (a). A trial by jury resulted in appellant being found guilty of breaking and entering the home of Mary Newland with intent to commit a felony (Burns' Ind. Stat. Anno. § 10-704) and sentenced to the Indiana State Prison for not less than one (1) nor more than ten (10) years.

Briefly the evidence shows that a house owned by Mary Newland was broken into on or about December 4, 1966, and from the house was taken a TV set, a camera, a coat and other property.

About 3:00 on December 4, 1966, before the burglary was discovered, officer Mize of the Indianapolis Police Department, while patrolling in the neighborhood of the House, observed a 1951 green DeSoto leaving the vicinity of the house in question. He followed it to a service station at English and Emerson where the two occupants jumped out of the automobile and fled. Inside the car the officer found the TV set,

camera, the coat and other property identified as belonging to Mary Newland.

At the trial the officer identified the appellant as one of the occupants of the car who fled therefrom at the time in question. The evidence further showed that the DeSoto car in question had been given to the appellant for repair purposes at the time in question.

After officer Mize had testified as to the identity of the appellant he was called back to the stand after cross-examination, and the following testimony was elicited on re-direct examination:

"Q. How did you tie up the picture of the defendant, Jerry Glover with the face that you saw at the scene?

"A. I was given his name.

"Q. And where did you get his name?

"A. By an informant.

"Q. Have you used this informant before?

"A. I have.

"Q. Was it a reliable informant?

"A. Yes.

"Q. In your opinion?

"A. Yes.

\* \* \* \* \*

"RECROSS EXAMINATION.

"QUESTIONS BY MR. MULLIN, attorney for Mr. Glover.

"Q. Oh, yes, this reliable informant of yours or tested informant, no doubt.

"A. Yes.

"Q. When he tells you something it comes out in court the right way?

"A. It comes, it's good information, yes.

"Q. What is his name?

"A. This I would rather not give.

"Q. I know you wouldn't but you are under oath.

"A.   Because I think to give an informant's name would endanger future references to this person.

* * * * *

"THE COURT: Well, I am not going to compel the officer to answer.

"MR. MULLIN: Well, Your Honor, we would like to put the fellow on the stand because he apparently knows more about this than this officer would. That's all we want to do, just let the jury take a look at him, or her. May I ask some questions further?

"THE COURT: Very Well.

"Q.   Is this a male or female?

"A.   I have information from both.

"Q.   Information from both?

"A.   Yes.

"Q.   So there is more than one?

"A.   Yes, it's more than one.

"Q.   And each is a tested informant?

"A.   Each person has contributed at times different information.

"Q.   But always anonymous?

"A.   Now, you are putting me on the spot here. To an extent, yes, anonymously in that they are not in court.

"Q.   Well, they call and give information.

"A.   They have given me information, yes.

"Q.   Yes.

"A.   Right.

"Q.   But have they ever been wrong?

"A.   Not to me, no.

"Q.   To anyone?

"A.   That I don't know, but not to me, not the information that I was given.

"Q.   Give us a case where they were right, another case?

"A.   Well, this is a case right here that I was given the information on, and this case hasn't been decided.

"Q.   Then there is no other case?

"A.   There have been other cases, but disclosing them . . . (the witness did not finish his answer).

"Q. I am just trying to find out who this reliable, how reliable and how well tested this reliable and tested informant is.

\* \* \* \* \*

"MR. CARTER: Well, Your Honor, I am going to object to this, this doesn't go to any of the issues before this jury.

"MR. MULLIN: Your Honor, this was brought out on redirect, Your Honor.

"MR. CARTER: I think the case stands or falls on the evidence that comes from the witness stand and not what comes from the mouth of some informant, and this goes to a very minor point in the case to begin with.

"MR. MULLIN: Well, Your Honor, it must not have been because the prosecutor, Mr. Carter, asked on redirect about the informant, we didn't. He's allowed to ask about it, he's allowed to go into it and verify the officer's conclusion, but they don't want him cross examined about this.

"MR. CARTER: Well, I think he has gone into the examination about the reliability, I think it is our duty to protect the police officers and their investigations, particularly as to informants.

"THE COURT: Well, of course, there are no two ways about it, the State, themselves, opened the door on this and defense is entitled to cross examination on the subject. However, I am not going to compel the witness to produce information which is going to disclose the identity of an informant. So you may cross examine within those limits."

It is apparent, as the trial court states, that the state opened up the testimony with reference to the informant who "put the finger on" the appellant in this case. It is also apparent that the state called officer Mize back on redirect examination to bolster the testimony of the officer as to the identity of the appellant by referring to how the officer tied the picture identifying the defendant, to the defendant.

We should recognize first that this is not one of the rather common cases in which a defendant seeks to find out in preparing his defense preliminary to trial, the name of inform-

ers, nor is it a case in which the government refuses to identify and name a participant in the crime, as in the case of *Roviaro* v. *U. S.* (1957), 353 U. S. 53, 77 S. Ct. 623, 1 L. Ed. 2d 639. In that case the United States charged the defendant with a sale of a narcotic drug to "John Doe" and refused to identify the individual. In that case the United States Supreme Court held that the defendant was entitled to this information. If the government sought to pursue the prosecution it was necessary to a proper preparation of the defense that a defendant have such information. The court in that case reviews the problem of non-disclosures of informants as a matter of public policy. There it stated:

> "A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action. Most of the federal cases involving this limitation on the scope of the informer's privilege have arisen where the legality of a search without a warrant is in issue and the communications of an informer are claimed to establish probable cause. In these cases the Government has been required to disclose the identity of the informant unless there was sufficient evidence apart from his confidential communication."

The court finally concludes its discussion with the statement:

> "We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."

The case before us involves one not so much of balancing public interests against that of protecting a defendant, but

rather the inherent right of a defendant to attack the probative value of the testimony and the credibility of a witness. In the instant case we have in substance, on redirect examination, an officer testifying that he had reliable testimony or credible testimony from an informant that the appellant was guilty, and he used that to help identify the appellant from a picture. All rules of evidence give a defendant the right to attack this testimony and the source of it, which in fact, is hearsay, since it repeats the statement of a party not a witness. Just how great or how small the impact of this testimony was upon the jury, is not for us to say. However, we point out the state thought it might be of sufficient value to impress the jury or it would not have called the officer back for redirect examination.

This issue arose over the identity of the defendant. Identity as an issue of fact is a troublesome problem that has confronted this Court on occasion before where it has been urged that there are grave miscarriages of justice resulting from an overenthusiastic prosecuting witness in making identifications. *Baker* v. *State* (1956), 236 Ind. 55, 138 N. E. 2d 641; 3 Wigmore on Evidence, 3rd Ed., § 786a, p. 163; *Barnes* v. *State* (1946), 246 Ind. 485, 205 N. E. 2d 539.

It is important to realize that this is not a case where, on cross examination, it is brought out that officer Mize relied upon an informant in initiating the investigation and getting leads in the investigation. There may be a public policy in preventing the non-disclosure of informants used in such instances where at the trial, no evidence regarding the informant is presented to the jury. Hearsay testimony that law enforcement officers use and rely upon for investigation and the gathering of competent and material evidence, of course is not evidence properly to be used in the trial of a criminal case. Here, however, we have the state opening up the matter and the activity of two informants played up in the case, and then the state seeks to close the door after it had shown that they were "reliable" informants

who put the finger of identity upon the appellant. The door cannot be closed once it is opened. If the identity of an informant is to be protected, then it is up to the prosecuting attorney not to bring into the case evidence relating to the informants.

For a rather ample and extensive discussion on revealing the identity of informers in a criminal case, see the Annotation in 76 A. L. R. 2d beginning at page 267.

There are other questions raised and presented on this appeal which we need not consider by reason of the viewpoint which we have taken on the question previously discussed.

The judgment of the trial court is reversed, with directions to grant the appellant a new trial.

DeBruler, C.J., and Hunter, Jackson and Givan, JJ., concur.

NOTE.—Reported in 251 N. E. 2d 814.