CHARLES DARRELL MCCULLEY *v.* STATE OF INDIANA.

[No. 370S57. Filed September 7, 1971.]

*Rice & Vanstone,* of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert A. Zaban,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was convicted of Second Degree Burglary and of Theft. On the burglary conviction he was sentenced to be confined at the Indiana State Reformatory for a period of from two (2) to five (5) years and disfranchised for a period of two (2) years. On the theft conviction, he was fined Fifteen Hundred Dollars ($1500.00). The motion for a new trial specifies errors numbered from 1 through 28, and the matter is before us on an assignment of errors charging error in the trial court's overruling of the motion. Appellant, by his brief, has specifically waived causes numbered 7, 9, 11, 12, 13, 14, 26, 27 and 28 of the motion for a new trial. With the exception of causes 19, 20 and 21, the remaining causes all relate to either one or the other of two rulings, the first being a denial of the defendant's motion to suppress evidence obtained in a search immediately following the arrest, and the second being a refusal of the trial court

to permit cross-examination of a State's witness concerning the identity of an informer. The right of such cross-examination was refused both at the hearing upon the motion to suppress and at the trial.

At the hearing upon the motion to suppress, the following evidence was adduced. Acting upon an informer's tip that a pharmaceutical house was to be burglarized, Police Officers Martin, Stinson and Bray took up surveillance of the pharmaceutical house premises at about 11:00 p.m. on August 28, 1969. Martin saw the defendant, a former employee of the pharmaceutical company, enter the premises at 12:30 a.m. on August 29th. Martin, Stinson and Bray saw Defendant leave the building at 1:15 a.m. The manager of the pharmaceutical house was called. He and Officers Stinson and Virgin went to the building, where they observed fourteen cartons of drugs stacked in the receiving department, where they had not been at the close of business on the previous day when the premises were checked and locked. Officer Stinson placed his initials upon each of the cartons. The premises were kept under surveillance. At 6:30 a.m., the defendant appeared in the area in his automobile and circled the area within two or three blocks of the premises four or five times. At approximately 6:45 a.m. a truck driven by one James Granderson drove up to the receiving dock and remained for about fifteen minutes, during which time Defendant was nearby in his parked car. The truck pulled away, and the defendant also drove away in the same general direction. Police Officers, in four separate automobiles and in radio contact with each other, followed the two. At a secluded spot, the defendant and Granderson came together and were there arrested, and their persons and the vehicles were searched. The truck contained the stolen cartons of pharmaceuticals. An operable miniature flashlight was found on the defendant's person, and a pair of rubber gloves and a key to the door of the pharmaceutical house was found in his automobile. These are the items that the defendant sought to suppress.

Citing *Glover* v. *State* (1969), 253 Ind. 121, 251 N. E. 2d 814, Defendant contends that he had a right to learn the identity of the informer and to cross-examine for that purpose, because the prosecution had "opened the door" of that subject in direct examination and could not then close it. The *Glover* case (*supra*) does stand as authority for the rule that if the identity of the informer is to be protected, then it is up to the prosecuting attorney not to bring into the case evidence relating to him. However, we must look to the purpose of the rule before applying it; and if the problem at hand is not within the scope of such purpose, its application is not required. It is the policy generally to prevent the disclosure of an informer's identity. The police yields in certain cases, however, such as where disclosure is relevant and helpful to the defense of an accused or is essential to the fair determination of the cause. *Roviaro* v. *United States of America* (1957), 353 U. S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623. In the *Glover* case (*supra*) the State's witness, on re-direct examination, testified that he had the assistance of an informer in establishing both the guilt and the identity of the accused. When this revelation was made to the jury, the accused had a right to attack both the testimony and its source which, in fact, was hearsay, since it is repetitive of statements of a party not a witness. It is because the hearsay went to matters in issue that the accused's right to disclosure was given precedence over the general policy of non-disclosure. Here, however, the testimony concerning the informer merely revealed that the surveillance of the premises was undertaken by reason of an informer's tip. It in no way related to any matter in issue. It did not in any manner bolster the prosecution's case. The assistance of the informer merely served to alert the witness to a possible crime yet to be perpetrated. The crime was then committed in the presence of the witness. Knowledge of the identity of the informer could serve no purpose useful to the defendant's defense, and the disclosure to the jury of the reason the victimized pharmaceutical house was under surveil-

lance had no bearing upon any issue. The testimony implicating the defendant would have been the same, had it been mere chance that the police witnessed the defendant's participation in the crime. The *Glover* rule, therefore, simply has no application.

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro v. United States of America, supra.* 353 U. S. at 62.

Defendant's contention that the warrantless arrest was illegal and the fruits of the resultant search therefore inadmissible, because the police made no attempt to get an arrest warrant, is equally without merit. Defendant cites *McDonald v. United States of America* (1948), 335 U. S. 451, 69 S. Ct. 191, 93 L. Ed. 153, wherein the court reversed because of irregularities in the warrantless arrest and search incidental thereto. Although the court did not express it in definite language, it appears that the arrest was held to be invalid either because of illegality in the surveillance that gave rise to the arrest or because the circumstances did not justify a warrantless arrest, notwithstanding that the arresting officers viewed the offense. In that case, the arresting officers, without cause, broke into and entered a rooming house, although not into the defendant's rooms therein. They stood upon a chair, peered over the transom and observed the defendant carrying out an illicit gambling operation. Justifying the arrest by what they had seen, they proceeded to search and to seize evidence as an incidence of the arrest. The court spoke critically of both the breaking and entering and of arresting without a warrant, inasmuch as no emergency appeared. "* * * No reason,

except inconvenience of the officers and delay in preparing papers and getting before a magistrate, appears for the failure to seek a search warrant." 335 U. S. at 455.

It is not necessary in the case at hand, for us to theorize as to the correctness of the *McDonald* decision (*supra*) ; and we do not here attempt to determine whether probable cause, in the absence of exigent circumstances, is alone constitutionally sufficient to support a warrantless arrest for a felony. Here we have neither of the features considered objectionable in the *McDonald* case (*supra*). There was no illegality attendant to the surveillance; and there were exigencies compelling the arrest without a warrant. The officers observed Defendant break into and enter the pharmaceutical house from a place where they had a right to be. None of Defendant's rights were in any way violated. The officers simply observed his actions. It is not disputed that there was probable cause for Defendant's arrest. If exigent circumstances are in fact an additional requirement to support a warrantless arrest, they were, nevertheless, abundantly present. Although the police suspected the premises were to be burglarized, there was no probable cause for issuing a warrant until the defendant entered the premises at 12:30 a.m. Although a warrant would have been justified at this point, it probably could not have been obtained before morning. Also, a warrantless arrest at that point would have been justified, to assure the suspect's identification and to avoid possible escape. It would be unreasonable, however, as well as unwise, to require the police to arrest a suspect at the first blush of reasonable cause, when continued surveillance might either produce a stronger case or facts requiring a reassessment of the probabilities. Obviously, in this case, continued surveillance was in order. To have sought an arrest warrant at the time the crime was completed would have been to risk the escape of the defendant and his accomplice, as well as the loss of the stolen goods to the detriment of both the owner and the cause of the prosecution. Clearly, no warrant was required under these circumstances.

Grounds 19, 20 and 21 of the motion for a new trial were predicated upon alleged misconduct of the prosecutor in referring to the defendant, in the presence of the jury, as a "criminal." These causes have been waived by Defendant by his failure to pursue them in the argument section of his brief, as required by our Appellate Rule 8.3 (A) 7. *Ruggirello* v. *State* (1969), 252 Ind. 144, 246 N. E. 2d 481. We note in passing, however, that the remark complained of was made by the prosecuting attorney, in the presence of the jury, while counsel were arguing concerning the propriety of certain proposed cross-examination. In the course of the argument, the prosecutor stated "There is no compulsion on the part of the police officers to divulge their methods of operation here in the apprehension of criminals." The defendant has charged in his motion that the prosecuting attorney "* * * stated in the presence of the jury that the defendant was a criminal." We cannot interpret the prosecuting attorney's remarks in that fashion and think that the defendant misstates the record. Further, the jury was admonished to disregard the statement, which under ordinary circumstances is deemed sufficient, *Duke* v. *State* (1969), 249 Ind. 466, 233 N. E. 2d 159; and we find none of the circumstances compelling a mistrial, as were found in the recent case of *White* v. *State* (1971), 257 Ind. 64, 272 N. E. 2d 312, and the cases therein discussed.

Finding no error, the judgment of the trial court is affirmed.

Arterburn, C. J. and Givan, DeBruler and Hunter, JJ., concur.

Note.—Reported in 272 N. E. 2d 613.