George O'GRADY, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 4–184A24.

Court of Appeals of Indiana,
Fourth District.

July 22, 1985.
Rehearing Denied Aug. 23, 1985.

Charles A. Beck, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Presiding Judge.

George O'Grady supplicates this court to grant his appeal from a jury verdict finding him guilty of possession with intent to deal in a Schedule I controlled substance, heroin (IND.CODE 35–48–4–2, Class B felony), upon which verdict the trial court sentenced him to ten years. Among his issues he attacks the State's striking of a juror, the admission of hearsay evidence, and the giving of an improper instruction. We need not find error with regard to these issues because we are in agreement with O'Grady's contention there was insufficient evidence to support a conviction for dealing. We reverse.

FACTS

On August 11, 1983, Officers James Wurz and Daniel Harvey, narcotics investigators for the Indianapolis Police Department, received a tip from a known infor-

mant that O'Grady was selling heroin from his automobile at the corner of Indiana Avenue and St. Clair Street. In response to the tip, the two officers drove to the location in an unmarked vehicle and spotted O'Grady alone in his car, parked out in the street about 100 feet from the intersection. They drove up from behind O'Grady's car as an unidentified person walked away from it and pulled up parallel to it. Officer Wurz jumped quickly out of the car and flashed his badge in O'Grady's direction. O'Grady gasped loudly and threw a plastic bag out of the passenger's window in the direction of two old winos sitting on cement blocks. Wurz ran around the car and picked the package up, counting 26 tin foil packets within. Preliminarily determining the packets contained heroin, the officers searched O'Grady's person and his automobile. They found no heroin paraphernalia within the car nor observed any identifiable marks on O'Grady's body showing him to be a heroin user (although Wurz testified heroin can also be ingested through the nose):

"[State]: Did you find any evidence of heroin used inside of that automobile?

[WURZ]: Use? No sir I did not.

Q. What—basing this upon your experience, again, are the ways or way that heroin is ingested by the user?.

A. It is snorted through the nose or injected into the vein.

Q. Alright, and that is—obviously that injection is by the syringe method?

A. Yes.

Q. And you did not find any syringes in this automobile?

A. No sir I did not.

Q. Did you find any on the Defendant's person?

A. No I did not.

Q. Did you notice any visible needle marks on the Defendant?

A. No I did not."

Record, p. 93.

At trial, a police chemist identified the 2.0790 grams of powdery substance as containing 0.0449 grams of heroin. In addition, Officer Wurz testified that one method of packaging heroin for sale was in tin foil packets, or "bindles," usually sold at $10 apiece, a 2% strength (as here) indicating perhaps a new dealer trying to enter the Indianapolis market.

"Q. How is heroin normally sold Detective?

A. Well, in Indianapolis it is sold by a little capsule, a balloon, and usually in tin foil.

Q. Alright, I am sorry, but you will have to speak up a little bit.

A. The most common method in August was a capsule, a clear capsule, a gelatin capsule. Towards the end of August it changed—or the beginning of August, rather it changed to tin foil packet, and there are also balloons they sell it in.

A. Alright, and at the local level again, in Indianapolis, is there any norm, any normal amount that a user of heroin normally buys at one time?

A. Packets like this, I would say two—three at the most.

Q. Alright, and in August, on or about August 11, 1983, to your knowledge was the going market price for one bindle similar in size to what you confiscated here?

A. Ten dollars. It is called a dime bag."

Record, pp. 93–94. He also stated that two of these particular bindles would be necessary to comprise a single dose for a regular user. However, he also stated that a heavy user might ingest two half-T's (half teaspoons) a day, with half-T's costing $125.

"Q. And what other than dime bags is heroin sold in?

A. Dime, thirty, fifty—that is, thirty dollars, fifty dollars—half a "T", which is half a teaspoon—teaspoon—a spoon, or a dipper, which is the same size. It is a tablespoon.

Q. Alright, and for instance, you mentioned half a "T". How much would that go for, or in August of '83 how much would it have gone for?

A. Half a "T" is $125.00.

Q. On the bindles, the size which you found in State's Exhibit 1, how many doses would be contained in one such bindle?

A. Well I think you would use two of them.

Q. So it would be half a dose?

A. Well, it would all depend on the person themselves. If they are a strong user it takes more, and if they was just beginning, they would just take one.

Q. Alright, if they were a strong user how many would they use?

A. They can go all the way up to a half a "T" at a time maybe twice a day."

Record, pp. 94–95. The only corroborative evidence offered by the other arresting officer, Officer Harvey was that he found no evidence of drug use in O'Grady's car and had observed no needlemarks on his person.

O'Grady testified he threw something else out of his car, but the jury evidently chose to believe the State's evidence and found him guilty of dealing in heroin.

## DECISION

*Sufficiency of the Evidence*

■ O'Grady contends the jury verdict here was contrary to law because the State failed to present sufficient evidence of the offense of dealing, particularly of the element of requisite intent. We agree.

The specific crime of which O'Grady was charged is at I.C. 35-48-4-2:

"A person who:

\*    \*    \*    \*    \*    \*

(2) possesses, with *intent to ... deliver,* a controlled substance, pure or adulterated, classified in schedule I [heroin] ...

commits dealing in a schedule I ... controlled substance, a Class B felony." (Emphasis added.)

O'Grady alleged the element of "intent to deliver" was not supported by the evidence most favorable to the verdict. Because intent is a mental state, the trier of fact must usually "resort to reasonable infer-ences based upon examination of the surrounding circumstances to reasonably infer its existence." *Farno v. State* (1974), 159 Ind.App. 627, 308 N.E.2d 724, 725. We cannot glean substantial evidence of probative value from this record to find O'Grady possessed the requisite intent.

The record simply reveals O'Grady threw a package of 26 bindles of half-doses of 2% heroin out of his car and that his outward physical appearance, after a cursory inspection, seemed to indicate he himself was not a user. There is nothing in the record to indicate a strip-search was conducted nor what parts of O'Grady's anatomy the officers checked in order for them to state they observed no visible needlemarks. Officer Wurz also testified heroin is usually sold in such bindles (the obverse inference being it was also so purchased) and that, ordinarily, a user only buys two or three bindles at a time. However, a close scrutiny of Wurz's evidence also reveals that O'Grady possessed $260 worth of heroin (26 $10-bindles) and that a heavy user may need a $250 quantity in a single day to support his habit. We believe a case nearly on point disposes of the issue of intent in O'Grady's favor.

In *Pettigrew v. State* (1975), 165 Ind. App. 390, 332 N.E.2d 795, the defendant was convicted of the *sale* of heroin under an earlier, similar statute. *See* 1971 Ind. Acts, P.L. 468 § 1 *et. seq.* Pettigrew went to the door of a home which the police had under surveillance, returned to the edge of the porch from whence he came, dropped a white envelope beside the porch steps then returned to the door. The police recovered the envelope, which was labelled "Pettigrew, Mabel" and contained 40 individually wrapped foil packages of heroin. Pettigrew denied any connection with the drugs (as did O'Grady here). As this court stated in *Pettigrew,* and what we find applicable here:

"The record in the instant case is devoid of evidence tending to prove any transaction or communication between [the defendant] and any other person with reference to the heroin. Likewise,

there is no evidence tending to prove the existence of a distribution scheme or pre-arranged sale. Furthermore, the manner in which [the defendant] disposed of the heroin would not support an inference of intent to deliver or dispense." 165 Ind.App. at 393, 332 N.E.2d at 798. We thus find O'Grady's situation lacking in the characteristics of a dealing offense for want of evidence, even circumstantial evidence supporting only an inference of dealing. *See Meiher v. State* (1984), Ind., 461 N.E.2d 115 (actual sale); *Henry v. State* (1978), 269 Ind. 1, 379 N.E.2d 132 (actual sale); *Gray v. State* (1967), 249 Ind. 629, 231 N.E.2d 793 (actual sale); *Romack v. State* (1983), Ind.App., 446 N.E.2d 1346 (intent to deliver based on quantity).

Our opinion in *Thompson v. State* (1980), Ind.App., 400 N.E.2d 1151, closely parallels the case here where no actual sale is in evidence, unlike the representative cases cited above. But in *Thompson,* the State did introduce testimony of a reliable informant that an individual named "Bob" (defendant's name was Robert) had a large quantity of heroin for sale and was present at a restaurant where the defendant was found as directed and thereby arrested. Defendant was apprehended with three separate caches of heroin, a police officer testified the quantity was sufficiently large to indicate resale, and a polygraph examination showed defendant was not truthful when asked if he had possessed the heroin with the intent to deliver. No such supportive evidence exists here; rather, in the absence of evidence of sale, an inference that the heroin was only for personal use is just as, if not more, tenable. We believe O'Grady is distinguishable from *Thompson v. State, supra,* and similar cases because the vague evidence and equivocal testimony presented at O'Grady's trial lacks the specificity and concreteness we believe must support the state's case, particularly with regard to the element of intent. *See Pettigrew v. State, supra.*

The dilemma faced by the trier-of-fact and by courts on appellate review of determining the significance of certain quantities of drugs, in cases such as here where the issue becomes crucial to the state's case for lack of other real evidence, has been recognized by this court on several recent occasions. In *Voirol v. State* (1980), Ind.App., 412 N.E.2d 861, Judge Young, in addressing the question of whether a large quantity of drugs permits the inference of predisposition to sell, stated as follows:

"The inference permitted from possession of or access to a *large* quantity depends upon a relative determination or comparison; the trier of fact must have some basis from which to determine a particular quantity is large. We surmise that a quantity permitting an inference of predisposition to sell would be such a quantity that could not be personally consumed or utilized and therefore of necessity available for delivery or sale."

*Id.* at 864 (emphasis in original; footnote omitted). Then, again, in *Romack v. State, supra,* 446 N.E.2d 1346, a case more directly on point, the quantity of the drugs in the defendant's possession was the determinative factor where there was no evidence of the *significance* of such a quantity:

"Illegal possession of large quantities of narcotics does not create a presumption of intent to deliver, but may support an inference of intent.... The probative value of quantity in proving intent obviously increases as the quantity itself becomes greater, but there is some confusion as to how the State may prove that a particular quantity exceeds an amount which would be possessed for personal consumption.

"At Romack's trial, the State failed to introduce expert testimony as to quantity and personal use. We believe that the importance of quantity was attenuated due to the absence of such testimony. In some circumstances, that omission would prove fatal, especially where there is evidence that the defendant is a drug user and where the amount of narcotics in possession is less than the quantity in the present case [two hundred tablets of methaqualone]."

*Id.* at 1351. The dilemma posed in *Romack* by virtue of the lack of evidence regarding the actual significance of such a large quantity of methaqualone (200 tablets) was resolved by the consideration of additional, albeit circumstantial, evidence of intent to deliver: sale of marijuana to an informant simultaneously to discovery of the methaqualone and the possession of a mere fifteen tablets in a shirt pocket indicating a quantity for personal consumption. In contrast here, we have a meager quantity of heroin, equivocal expert testimony as to the significance of that quantity, and no further evidence supporting an inference of intent to deliver. In both *Thompson, supra,* and *Romack, supra,* there was evidence each defendant was engaged in trafficking of drugs immediately before their seizure. Such was not the case here. Thus, we determine that O'Grady was improperly convicted of dealing in heroin because his conviction could only have been based upon "mere suspicion, conjecture, conclusion, guess, opportunity, or scintilla." *Ruetz v. State,* 268 Ind. 42, 51, 373 N.E.2d 152, 157, *cert. denied* (1978) 439 U.S. 897, 99 S.Ct. 261, 58 L.Ed.2d 245.

There was evidence at trial which might tenuously have connected O'Grady to a dealing offense. Officer Wurz testified, over O'Grady's hearsay objection, to the content of the informant's tip he received, such content revealing that O'Grady had been selling heroin at the corner of Indiana Avenue and St. Clair Street from a green Chevrolet with one off-colored door. The trial court admitted the evidence but only after admonishing the jury to disregard the substance of the conversation and to merely consider it as evidence of why the officer proceeded as he did. Whether the trial court's ruling was correct or not, this testimony inculpating O'Grady was not supposed to be used as substantive evidence by the jury. Thus, what we are left with on appellate review is a record where the bulk of the evidence is as insufficient as the State's case in *Pettigrew, supra,* 165 Ind.App. 390, 332 N.E.2d 795. The additional awkwardly presented evidence related to customary sales (types of packaging, prices, amounts needed, etc.) and to a superficial nonspecific observation that O'Grady was not a user. This is of such speculative value that it adds nothing to the *Pettigrew*-like facts. Thus, the State presented insufficient evidence for the jury to convict O'Grady of dealing in heroin.

■■■ We have considered the possibility of reducing O'Grady's conviction to the lesser included offense of possession. However, the information by which O'Grady was charged tracks almost exactly the statutory language in I.C. 35–48–4–2. In the absence of any variance in this language to indicate the prosecutor intended to also charge O'Grady with possession (IND. CODE 35–48–4–6 (1982) or IND. CODE 35–48–4–7 (1982)), we are compelled to find that the prosecution was limited to an offense of dealing and therefore may not reduce the offense. *See Compton v. State* (1984), Ind., 465 N.E.2d 711; *Sills v. State* (1984), Ind., 463 N.E.2d 228; *Slayton v. State* (1984), Ind.App., 471 N.E.2d 1154.[1]

Reversed.

---

1. Even if we could reduce O'Grady's conviction from dealing to the lesser included offense of possession we would not because we believe Officer Wurz's testimony of his conversation with the informant was sufficiently prejudicial that the whole proceedings were tainted. This testimony, by reason of its intended use, may not have been technically hearsay (if it had been properly limited) as it is recognized in Indiana: "Hearsay has been defined as an out-of-court statement repeated in court to establish the truth of the matter contained therein." *Samuels v. State* (1978), 267 Ind. 676, 372 N.E.2d 1186. Ordinarily, innocuous testimony regarding general information conveyed by an informant is proper to establish the course of a police investigation. *E.g., Morris v. State* (1980), 273 Ind. 614, 406 N.E.2d 1187; *McNew v. State* (1979), 271 Ind. 214, 391 N.E.2d 607. For example, in *Torres v. State* (1982), Ind., 442 N.E.2d 1021, our supreme court was confronted with the improper admission of hearsay evidence in a child molesting case. In *Torres* the state entered a file card into evidence which the police had received by mail. On that card had been typed the defendant's name, along with other information. The trial court, upon admitting the evidence, ruled the statement on the card was admissible to show why the police officer acted as he did. The supreme court declared this was

YOUNG, J., concurs.

CONOVER, J., concurs in result with opinion.

CONOVER, Judge, concurring in result.

I concur in the result. Possession of a large quantity of heroin is sufficient to infer an intent to sell in some cases. *Cf. Gray v. State* (1967), 249 Ind. 629, 231 N.E.2d 793, 796; *Thompson v. State* (1980), Ind.App., 400 N.E.2d 1151, 1153. However, when this is the only evidence from which intent to sell may be inferred and it is coupled with uncontroverted testimony a user may require nearly all of it for personal use, the evidence is not sufficient to show intent to deal.

Here, however, under all the evidence in this case, 26 packets of heroin is not a sufficiently large quantity from which intent to sell may be inferred. In this regard it is uncontroverted

(a) a heroin user may require nearly all the 26 packets found in O'Grady's possession for his personal use, and

(b) heroin may be inhaled through the nose, a process which leaves no observable needle marks.

Thus, O'Grady may have been a heroin user who had in his possession only enough to satisfy his personal needs. Such evidence is clearly insufficient to support a reasonable inference of intent to sell.

an improper ground for admission of such specific testimony:

> "We have held testimony of a police officer which merely relates to an investigation of alleged crimes and establishes only that the information was received within the officer's own knowledge is not objectionable hearsay. *Roberts v. State*, (1978) 268 Ind. 348, 375 N.E.2d 215, citing *Ballard v. State*, (1974) 262 Ind. 482, 318 N.E.2d 798. In the case at bar, the incriminating statement made by an unknown and unavailable declarant specifically named appellant as the perpetrator of the offense portrayed by the photographs. Any explanation of Officer Ballard's conduct in his investigation would have been properly limited to his testimony that he followed leads provided by the card."

442 N.E.2d at 1024. After consulting such authority, we believe the informant's message was inadmissible and because of the extent to which Officer Wurz was allowed to elaborate on the specific information about O'Grady, rather than being limited to the mere generalities of the communication (*see, e.g., Head v. State* (1982), Ind., 443 N.E.2d 44), we believe the testimony was prejudicially irrelevant. *See Medvid v. State* (1977), 172 Ind.App. 27, 359 N.E.2d 274.

The State was able to place before the jury testimony that O'Grady was dealing, a fact not necessary to establish that the officers were merely pursuing an investigation into alleged drug activities. If the informant's information had been used to establish probable cause in this case, it may have been relevant, but proba-

ble cause was not in issue here. *Medvid v. State, supra,* 172 Ind.App. 27, 359 N.E.2d 274; *see Mayes v. State* (1974), 162 Ind.App. 186, 318 N.E.2d 811. Instead, the State was able to put in evidence the fact of O'Grady's dealing, an offense which was not otherwise supported by sufficient evidence.

We believe the better rule in such cases is to exclude specific hearsay evidence that police officers rely on and use in the course of their investigation when general information would just as easily establish the fact which triggered their actions. *See Glover v. State* (1969), 253 Ind. 121, 251 N.E.2d 814; *Mayes v. State, supra,* 162 Ind.App. 186, 318 N.E.2d 811. The better practice would be for the court to sustain a defense objection. Then the prosecution can make an offer to prove whereby the court can determine the minimal relevancy, if any, in the testimony and can correct its ruling, by permitting general non-prejudicial information explaining the police's action. *See Torres v. State, supra,* 442 N.E.2d 1021. In a case such as this, the officer need only to state that an informant had called with regard to drug dealing at the place in question and not O'Grady's alleged role in it. Otherwise, the State could willy-nilly establish evidence before the jury, under the guise of a police investigation, which would otherwise be an "evidentiary harpoon." We do not believe our appellate courts intend to allow such prejudicial practice when they rule that evidence is admissible to show the course of an official investigation. *But see Muday v. State* (1983), Ind.App., 455 N.E.2d 984.