Sovayda VASQUEZ, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 02S00–0011–CR–711.

Supreme Court of Indiana.

Nov. 16, 2001.

Stanley L. Campbell, Fort Wayne, Indiana, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, James A. Joven, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Sovayda Vasquez and two other women beat and stabbed a man to death and then stole his property. We find that her prior criminal history and the circumstances of this crime support the 65 year sentence for murder imposed by the trial court. And we reject her claims that there was insufficient evidence to convict her of robbery, residential entry, and theft, largely on the basis of her own statements.

*Background*

The facts favorable to the judgment indicate that on December 21, 1998, Defendant Sovayda Vasquez, Lyane Casiano, and Camelia Luna[1] went to the Fort Wayne home of James Johnson after smoking crack cocaine and drinking at another house. They spent some time at Johnson's drinking and playing cards. As the evening progressed, Johnson and Casiano ended up on a couch in the living room area with Johnson on top of Casiano. The two were kissing. At the same time, Defendant and Luna were in the kitchen.

While Casiano and Johnson were kissing on the couch, Defendant came from behind and hit Johnson on the head with a black, cast iron, skillet. Casiano ran to a back bedroom where she saw Luna rummaging through the drawers. When she came out of the bedroom, Casiano saw that the skil-

---

1. Luna was tried separately. We also decide her appeal today. *See Luna v. State,* 758 N.E.2d 515 (Ind. 2001). The fact that they were tried separately accounts for the minor differences in the recitation of the facts in the two opinions.

let had broken. Defendant asked her to get another skillet, which Casiano did. Defendant continued hitting Johnson with the second skillet.

As Defendant beat Johnson, Casiano and Luna loaded stereo equipment, telephones, and any thing else "they could get their hands on" into a truck. After Casiano and Luna had loaded their truck, Casiano returned to the house to find Defendant hollering at her, "Get some knives." Casiano retrieved some "old butcher knives" from the kitchen and Defendant began stabbing Johnson with them.

Defendant, Casiano, and Luna then drove to the home of Chavis Taylor, Defendant's boyfriend. The stereo equipment was taken into his apartment and pawned the next day by Taylor's cousin. (R. 513.) Taylor kept one piece of stereo equipment and a VCR.

The next day, Defendant and Taylor returned to Johnson's home. Taylor followed Defendant into the house through a side door. Inside the house he saw the body of a "black guy." Taylor left the house for the car. Approximately three minutes later, Vasquez came out of the house with some liquor bottles.

Defendant was convicted at trial of Murder,[2] Felony Murder,[3] Robbery, a Class A felony,[4] Residential Entry,[5] and Theft.[6]

## Discussion

### I

Defendant contends that there was insufficient evidence to maintain her conviction for robbery.

■■■ In reviewing a sufficiency of the evidence claim, the Court neither reweighs the evidence nor assesses the credibility of the witnesses. *See Garland v. State,* 719 N.E.2d 1236, 1238 (Ind.1999) *reh'g denied.* We look to the evidence most favorable to the verdict and draw reasonable inferences there from. *See Sanders v. State,* 704 N.E.2d 119, 123 (Ind.1999). A conviction will be upheld if there is substantial evidence of probative value from which a jury could have found the defendant guilty beyond a reasonable doubt. *See Warren v. State,* 725 N.E.2d 828, 834 (Ind.2000).

### A

Defendant's contention that there was not sufficient evidence to sustain a robbery conviction rests on her claim that "there was no evidence presented at trial to establish that she took property of the deceased." (Appellant's Br. 7.) She further argues that accomplice testimony "did not provide any evidence that the Defendant was responsible for the taking of the stereo equipment." (Appellant's Br. 8.)

Defendant was found guilty of robbery, a Class A felony. *See* Ind.Code § 35–42–5–1 (1998) ("A person who knowingly or intentionally takes property from another person or from the presence of another person: (1) by using or threatening the use of force on any person; or (2) by putting any person in fear; commits robbery .... a Class A felony if it results in serious bodily injury to any person other than a defendant."). This can be proven through the testimony of an accomplice. *See Griffin v. State,* 501 N.E.2d 1077, 1079 (Ind.1986); *Sumner v. State,* 453 N.E.2d 203, 205 (Ind.1983).

In this case, Defendant acknowledged that she, Casiano, and Luna sought to steal items such as Johnson's VCR. Casi-

---

**2.** *See* Ind.Code § 35–42–1–1(1) (1998).

**3.** *See* Ind.Code § 35–42–1–1(2) (1998).

**4.** *See* Ind.Code § 35–42–5–1 (1998).

**5.** *See* Ind.Code § 35–43–2–1.5 (1998).

**6.** *See* Ind.Code § 35–43–4–2 (1998).

ano testified that, to this end, Defendant and Luna, tried to get Johnson drunk so that they could rob him. Defendant admitted to approaching Johnson from behind and hitting him on the back of his head with a black, iron, skillet while Casiano was kissing him. Defendant also stabbed Johnson in the stomach. Further, Defendant directed Casiano and Luna to take various items from the victim's house, and she testified that she noticed Johnson's coins had made her purse heavy when she picked it up to leave.

In *Sumner v. State,* 453 N.E.2d 203 (Ind.1983), this court found sufficient evidence to support an armed robbery conviction, absent testimony that a specific item was taken. In that case, testimony placed the defendant at the scene of the crime and "there was testimony by a co-defendant that the [d]efendant participated in the commission of the crime, shared in the spoils of the crime, and induced another person to commit the shooting." *Sumner,* 453 N.E.2d at 205.

■ As in *Sumner,* testimony in this case placed Defendant at the scene of the crime. Testimony also established that Defendant participated in the planning and commission of the crime, sought to steal items from Johnson, and directed others to take items from the house. Defendant's testimony further indicates that Johnson's coins were put in her purse. From this evidence, the jury could properly infer that Defendant took property from Johnson's home.

■ Even without explicit evidence that Defendant actually took items from the house, she is still liable for robbery as an accomplice. The Indiana Code provides: "A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person: (1) has not been prosecuted for the offense; (2) not been prosecuted for the offense; (2)

has not been convicted of the offense; or (3) has been acquitted of the offense." § 35-41-2-4 (1998).

An accomplice can be held criminally liable for "everything done by his confederates which was a probable and natural consequence of their common plan. ..." In determining accomplice liability, the jury may infer participation from defendant's failure to oppose the crime, companionship with the one engaged therein, and a course of conduct before, during, and after the offense which tends to show complicity.

*Shane v. State,* 716 N.E.2d 391, 396 (Ind. 1999) (citations omitted); *Harris v. State,* 425 N.E.2d 154, 156 (Ind.1981).

Casiano confessed to "grabbing Johnson's stereo equipment" and "loading it onto the truck" as Defendant was stabbing Johnson in the stomach and yelling to "make sure we get everything out of here." (R. 770–71.) This is sufficient evidence from which the jury could reasonably infer that beyond a reasonable doubt Defendant told Casiano and Luna to take the stereo equipment as well as the other items the group took, i.e., to establish accomplice liability.

### B

Defendant also contends that there was insufficient evidence to support her conviction for residential entry.

■ Residential entry occurs when "[a] person ... knowingly or intentionally breaks and enters the dwelling of another person." Ind.Code § 35-43-2-1.5 (1998). "The use of the slightest force in pushing aside a door in order to enter does constitute a breaking through the doorway." *Passwater v. State,* 248 Ind. 454, 229 N.E.2d 718, 721 (1967).

■ Taylor testified that on the day after Defendant killed Johnson, Taylor drove Defendant to a house on Webster Street. Taylor then followed Defendant as she opened the unlocked side door and entered the house. In the house, Taylor saw a dead "black guy." In a videotaped confession, Defendant corroborated this account and established the house as Johnson's.

This was sufficient evidence to sustain Defendant's conviction of residential entry.

## C

Defendant also contends that there was insufficient evidence to sustain the conviction for theft.

"A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft." Ind.Code § 35–43–4–2(a) (1998).

■ In her videotaped confession, Defendant stated that she, Casiano, and Luna had gone to Johnson's house because they did not have anything to drink and wanted more. Taylor testified that on the day after the murder, when Defendant visited Johnson's house, Defendant took two bottles of liquor from the house when she left. Defendant admitted that she took a bottle of liquor and a candy bowl on the day after the murder. From this evidence a jury could reasonably infer that beyond a reasonable doubt the liquor Defendant took was Johnson's. Accordingly, there was sufficient evidence to sustain the conviction for theft.

## II

Defendant contends that the trial court improperly enhanced Defendant's sentence for murder. Defendant does not challenge the court's consecutive sentencing order.

In general, the legislature has prescribed standard sentences for each crime, allowing the sentencing court limited discretion to enhance each sentence to reflect aggravating circumstances or reduce the sentence to reflect mitigating circumstances.

■■ When the trial court imposes a sentence other than the presumptive sentence, this Court will examine the record to insure that the court explained its reasons for selecting the sentence it imposed. *Archer v. State,* 689 N.E.2d 678, 683 (Ind. 1997) (citing *Hammons v. State,* 493 N.E.2d 1250, 1254 (Ind.1986) *reh'g denied*). The trial court's statement of reasons must include the following components: (1) identification of all significant aggravating and mitigating circumstances; (2) the specific facts and reasons that lead the court to find the existence of each such circumstance; and (3) an articulation demonstrating that the mitigating and aggravating circumstances have been evaluated and balanced in determining the sentence. *Mitchem v. State,* 685 N.E.2d 671, 678 (Ind.1997) (citing *Jones v. State,* 675 N.E.2d 1084, 1086 (Ind.1996)).

Here, the court found three aggravating factors in its sentencing order: (1) Defendant's prior criminal record; (2) the nature and circumstance of the crime; and (3) Defendant's need for correctional treatment best provided by a commitment to the Department of Corrections. It found two mitigating factors: (1) Defendant's mental state and (2) Defendant's remorse. After weighing the aggravating and mitigating factors, the trial court determined that the aggravating factors outweighed the mitigating factors.

Defendant only challenges the first two aggravating factors. Defendant does not challenge, and we therefore do not review, the third aggravating factor.

With respect to the first factor, the court noted Defendant's prior criminal record, consisting of a 1996 conviction for criminal conversion, a 1997 conviction for criminal conversion, suspended on condition of treatment, and a 1997 conviction for criminal trespass, suspended on condition of community service. The trial court also found that the "escalation of violence" gave insight into Defendant's character.

Relying on *Wooley v. State*, 716 N.E.2d 919 (Ind.1999) *reh'g denied*, Defendant argues that her three misdemeanor criminal convictions, "when considered in the context of a murder sentence, are not so significant that they justify an additional 10 years as an aggravating circumstance." (Appellant's Brief at 13.) Defendant's reliance on *Wooley* is misplaced. In *Wooley*, this court held that a criminal history comprised of one prior conviction for driving while intoxicated "is not a significant aggravator" in the context of determining sentence for a murder conviction. *See Wooley v. State*, 716 N.E.2d at 929. In dicta, we further noted, "significance varies based on the gravity, nature and number of prior offenses as they relate to the current offense." *Id.* at 929 n. 4.

This case is distinguishable from *Wooley* for three reasons. First, Defendant's criminal history consisted of three misdemeanor convictions, as opposed to just one in *Wooley*. It is not unreasonable for a trial court to take into account the frequency of Defendant's criminal activity.

Second, the trial court evaluated the import of the three prior convictions, determining that the "escalation of violence," from disregard for property rights to disregard for life, gave insight into Defendant's character. This is not an improper consideration. *See* Ind.Code § 35–38–1–7.1(a)(3)(B) (1998) ("In determining what sentence to impose for a crime, the court shall consider the person's character.").

Finally, in *Wooley*, Defendant's murder conviction was not determined to be significantly related to his single conviction for driving while intoxicated because the murder was not alcohol related. However, "a criminal history comprised of a prior conviction for operating a vehicle while intoxicated may rise to the level of a significant aggravator at a sentencing hearing for a subsequent alcohol-related offense." 716 N.E.2d at 929 n. 4.

In this case, Defendant's act of murder was a direct result of her plan to rob Johnson. Defendant's two prior convictions for conversion are relevant in the context of a murder committed for the purpose of robbery as both crimes involve the taking of property. That Defendant used deadly force to effectuate the taking of property does not preclude the trial court from considering Defendant's prior conversion convictions.

With respect to the second aggravating circumstance, the court reasoned that the nature and circumstances of the crime were particularly brutal. Indiana Code § 35–38–1–7.1(a)(2) directs a trial court to consider the nature and circumstances of the crime committed when determining the imposition of sentence. "This aggravator is generally thought to be associated with particularly heinous facts or situations." *Smith v. State*, 675 N.E.2d 693, 698 (Ind.1996) (upholding as a proper aggravating circumstance that the defendant planned murder two or three days ahead of time).

Defendant makes two arguments why the trial court improperly applied this aggravator. First, "that murders, by their very nature, are brutal crimes." (Appellant's Br. at 13.) Second, that the court improperly considered the fact that Defendant returned to the house and removed some liquor, in that she had already been

convicted and sentenced for these crimes. (Appellant's Br. at 13.)

 Although elements of a crime cannot be used to enhance a sentence, particularized circumstances of a criminal act may constitute separate aggravating circumstances. *Morgan v. State*, 675 N.E.2d 1067, 1073 (1996) (citing *Ector v. State*, 639 N.E.2d 1014, 1015 (Ind.1994)). To enhance a sentence in this manner, the trial court must detail why the defendant deserves an enhanced sentence under the particular circumstances. *Smith v. State*, 675 N.E.2d at 698 (citing *Wethington v. State*, 560 N.E.2d 496, 509 (Ind.1990)). Here, the trial court noted:

> [D]efendant was invited into the victim's home and was trusted by the victim. The Defendant repeatedly hit the victim with a cast iron skillet with enough force to shatter [the skillet] into several pieces. Defendant then stabbed the victim multiple times after he had been rendered helpless and unconscious by the beating. He was left to die while the defendant and her companions rifled through his belongings, taking property, wiping their fingerprints off anything they had touched, and then returning to the victim's home the following day to take more property.

(R. 186.)

The trial court's decision that the nature and circumstances of the crime were particularly brutal was within its discretion.

 In the present case, the trial court enhanced Defendant's presumptive sentence based upon valid aggravators. The court specifically stated the reasons why it found each of the aggravating circumstances, and the court balanced the aggravating and mitigating circumstances in reaching its sentencing decision. In light of the nature of the offense and the evidence, the Appellant's enhanced sentence was not improper.

## CONCLUSION

We affirm Defendant's conviction and sentence.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.