Johnny L. PARKER, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 20A04–0202–CR–102.

Court of Appeals of Indiana.

Aug. 23, 2002.

Nancy A. McCaslin, Elkhart, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Johnny L. Parker appeals his conviction for Dealing in Cocaine within 1,000 Feet of School Property, a Class A felony, following a jury trial. He presents the following issues for our review:

1. Whether the trial court violated the Confrontation Clause of the Sixth Amendment to the United States Constitution and Article I, Section 13 of the Indiana Constitution when it ruled that the State did not have to reveal the identity of a confidential informant.

2. Whether his sentence is manifestly unreasonable.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On March 24, 1998, a man approached Detective Tim Fetterer, an undercover officer with the Elkhart Police Department, and asked him whether he wanted to buy crack cocaine and whether he had marijuana to sell. Detective Fetterer responded that he could probably acquire some marijuana to sell him at a later time. The man wrote down a pager number and wrote the letter "J" on a piece of paper and gave it to Detective Fetterer with instructions to call him when he had the marijuana or when he needed "anything."

Detective Fetterer paged "J" later that evening, and "J" telephoned him in response. During that conversation, Detective Fetterer arranged to meet "J" the following day, March 25, 1998. Detective Fetterer told "J" that he had not found any marijuana yet, but that he was interested in buying a sixteenth of an ounce of crack cocaine from "J." On March 25, 1998, during the afternoon, Detective Fetterer drove to a designated location in Elkhart and paged "J," who returned the page on Detective Fetterer's cellular phone. "J" told Detective Fetterer that he would meet him at the designated location in three or four minutes.

When "J" pulled up to Detective Fetterer's car, Detective Fetterer exited his car and got into "J's" car. The two drove a short distance before "J" stopped his car.[1] "J" then reached down to the seat between his legs and pulled out two plastic baggies containing what was later determined to be crack cocaine. "J" gave Detective Fetterer one of the bags, and Detective Fetterer told "J" that the amount did not appear to be a sixteenth of an ounce, as he had requested, so "J" put an extra piece of the "rock" into the bag. Detective Fetterer then gave "J" $80 for the crack cocaine, and Detective Fetterer exited "J's" car. During this entire transaction, Detective Fetterer was wearing a body wire, and

---

1. This encounter occurred within 1,000 feet of a public school in Elkhart.

another officer videotaped the events from a nearby location.

A short time later, Detective Fetterer contacted a confidential informant ("CI") in an attempt to find out what "J's" real name was. After Detective Fetterer had given only a few descriptive details, the CI told him that "J" was Parker. The CI confirmed that response when he spotted Parker driving the same car and wearing the same clothing that Detective Fetterer had observed only a half hour earlier.

The State charged Parker with dealing in cocaine within 1,000 feet of a school. A jury found him guilty as charged, and the trial court entered judgment of conviction accordingly. The trial court sentenced Parker to thirty-eight years.

## DISCUSSION AND DECISION

### Issue One: Confidential Informant

■ Parker contends that the trial court violated the Confrontation Clause of the Sixth Amendment to the United States Constitution and Article I, Section 13 of the Indiana Constitution when it ruled that the State did not have to reveal the identity of a confidential informant. The right to confront witnesses granted by our Federal and State Constitutions includes the right of full, adequate and effective cross-examination, which is fundamental and essential to a fair trial. *Geiger v. State*, 721 N.E.2d 891, 898 (Ind.Ct.App.1999). A trial court is allowed to control the conduct of cross-examination, and only a clear abuse of discretion will permit a reversal. *Id.* An abuse of discretion is shown when the restriction relates to a matter which substantially affects the defendant's rights. *Id.* A defendant objecting to restriction placed on the scope of cross-examination must demonstrate how he was prejudiced by the trial court's action. *Id.*

■ As a general policy, disclosure of a confidential informant or operative's name is prevented unless the defendant can show that disclosure is relevant and helpful to the defense or is necessary to a fair trial. *Id.* Here, after Detective Fetterer completed his transaction with "J" on March 25, 1998, he telephoned a CI in an effort to determine "J's" real name. At trial, during direct examination, the prosecutor and Detective Fetterer engaged in the following colloquy regarding the CI's role:

PROSECUTOR: Now you say on the 24th that when you first spoke with the defendant you didn't have a name for the face. Is that my understanding?

DETECTIVE FETTERER: That is correct.

PROSECUTOR: You ultimately put a name with the face.

DETECTIVE FETTERER: Yes. I recognized him as someone I had seen before but I did not know—I did not know his name. I know it wasn't "J." I didn't know his real name.

PROSECUTOR: How did you put the name with the face?

DETECTIVE FETTERER: I contacted a CI that knows that area pretty well and knows all the people in it.

PROSECUTOR: What's a CI?

DETECTIVE FETTERER: A CI is a confidential informant.

PROSECUTOR: And what was the nature of the contact?

DETECTIVE FETTERER: I explained to him uh, I say there's this guy in this gold Ford Taurus. I said I recognize him but I can't think of his name. I told him where he was hanging out at and just based on the phone conversation he says I know who that is. He says that's Johnny Parker.

PROSECUTOR: Did you then confirm that?

DETECTIVE FETTERER: Yes, I told him to—I told the CI to find out a little bit more about him. He then drove—he says well I know where he lives. He said he lives down near 1410 Delaware so—I said check it out and call me back. [The] CI called me back in 20 minutes and told me that he drove down to 1410 Delaware and actually saw Johnny Parker standing next to the gold Ford Taurus and I asked the CI what he was wearing and the CI gave me the exact description, the clothing description that he was wearing just a half an hour earlier when he sold me the cocaine and he gave me the plate number of the vehicle also and I had written down the plate number the night before and it was 49W3347 so I knew we were talking about the same car and the same person.

PROSECUTOR: Have you had similar conversations with that confidential informant in the past?

DETECTIVE FETTERER: Yes.

PROSECUTOR: You find the information ... did you find the information that he provided to you to be reliable?

DETECTIVE FETTERER: Yes, very.

Transcript at 42–44.

During cross-examination, Parker questioned Detective Fetterer regarding the CI's identity. Before Detective Fetterer answered, and after a side bar, the prosecutor engaged in the following colloquy with Detective Fetterer:

PROSECUTOR: Officer, you're familiar with the confidential informant in question?

DETECTIVE FETTERER: Yes I am.

PROSECUTOR: He's worked for quite some time?

DETECTIVE FETTERER: Yes, I worked with him, actually for about five (5) years now, worked with him.

PROSECUTOR: Still active?

DETECTIVE FETTERER: Yes I still talk to him on a regular basis.

PROSECUTOR: Disclosing his name, you believe that would impose some sort of danger of retribution?

DETECTIVE FETTERER: Very much so.

PROSECUTOR: Therefore are you more comfortable using his number that you know him by?

DETECTIVE FETTERER: Yes I am.

Transcript at 78. The prosecutor then moved to exclude the CI's name from evidence, and the trial court granted that motion over Parker's objection.

Parker continued his cross-examination of Detective Fetterer and questioned him about the CI's criminal history, which Detective Fetterer admitted included an arrest for selling drugs, and Parker asked him whether the CI used illegal drugs, to which Detective Fetterer responded "no." In addition, Parker asked Detective Fetterer whether the Elkhart Drug Task Force paid the CI for his assistance. Detective Fetterer responded that the CI did not get paid for identifying people, but that he did get paid for doing controlled drug buys. Parker extensively cross-examined Detective Fetterer regarding the CI's credibility, and the prosecutor never objected to any of the questions other than the one regarding his identity.

In support of his contention that the trial court erred when it excluded the CI's identity from evidence, Parker relies on our supreme court's opinion in *Glover v. State*, 253 Ind. 121, 251 N.E.2d 814 (1969). In *Glover*, a police officer initiated a traffic stop, and the two men in the vehicle fled the scene before the officer could interview

them, although the officer caught a glimpse of one of the men. In the abandoned vehicle, the officer found several items that had been reported stolen from a nearby residence. Two confidential informants subsequently contacted the officer and gave him the name of the defendant as one of the men who committed the burglary in question. The police officer testifying on redirect examination stated that he had "reliable testimony or credible testimony from an informant that the [defendant] was guilty, and he used that to help identify the [defendant] from a picture." *Id.* at 817. The trial court ruled that the State did not have to reveal the informant's identity. Our supreme court reversed the trial court and held that where the State "opens the door" regarding the issue of a CI's involvement in a case, the State cannot then seek to "close the door" after showing that the CI who "put the finger of identity" upon the defendant was "reliable." *Id.* at 818.

■ Here, the State raised the issue of the CI's involvement with Parker's case during Detective Fetterer's direct examination and established that the CI was "reliable." But, unlike *Glover*, where the facts indicate that the police would not have been able to apprehend the defendant without the information from the CI, in this case, the CI's information was only marginally helpful to Detective Fetterer in his investigation of Parker. This distinction comports with that made by our supreme court in *Dorton v. State*, 419 N.E.2d 1289, 1293 (Ind.1981), where the court noted that the CI in *Glover* established *both* the guilt and the identity of the defendant. This court has also distinguished *Glover*, noting that the CI in *Glover* supplied the "essential link" in identifying a defendant as the guilty party. *See Rihl v. State*, 413 N.E.2d 1046, 1052 (Ind.Ct.App.1980).

Our supreme court has held that a defendant did not show a need to divulge a CI's identity where, as here, "the informant's information alone did not constitute sufficient probable cause" to arrest the defendant and police gleaned sufficient facts to support probable cause on their own. *Williams v. State*, 529 N.E.2d 323, 324 (Ind.1988). Before Detective Fetterer contacted the CI, he had completed a controlled drug buy with Parker, which had been both audiotaped and videotaped, and he had sufficient probable cause to arrest Parker without the information gleaned from the CI's limited involvement. *See id.* And Detective Fetterer could have paged "J" again, arrested him during another arranged meeting, and then determined his name without any information from the CI. The CI's role was collateral and, as such, he was not a witness against Parker. Parker delivered the cocaine to Detective Fetterer *before* he was identified. The CI did not identify Parker as the guilty party or otherwise participate in the transaction.

In addition, Detective Fetterer testified that revealing the CI's identity would put the CI in danger of retribution. And Parker was able to thoroughly cross-examine Detective Fetterer regarding facts directly bearing on the CI's credibility.[2] For all these reasons, Parker cannot show that the CI's identity was essential to a fair determination of his cause such that a balancing of Parker's interests with the respective interests of the State mandated disclosure. *See Randall v. State*, 474 N.E.2d 76, 81 (Ind.1985); *see also Williams*, 529 N.E.2d at 324. We hold that the trial court did not err when it ruled that the State did not have to reveal the CI's identity.

### Issue Two: Sentencing

■ Parker also contends that his sentence is manifestly unreasonable. The

---

2. We note that the CI's credibility is not an issue, since the information he provided was not used to establish probable cause to arrest Parker.

determination of the appropriate sentence rests within the discretion of the trial court, and we will not reverse the trial court's determination absent a showing of manifest abuse of that discretion. *Bacher v. State*, 722 N.E.2d 799, 801 (Ind.2000). The trial court's wide discretion extends to determining whether to increase the presumptive sentence, to impose consecutive sentences on multiple convictions, or both. *Singer v. State*, 674 N.E.2d 11, 13 (Ind.Ct. App.1996). If the sentence imposed is authorized by statute, we will not revise or set aside the sentence unless it is manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B); *McCann v. State*, 749 N.E.2d 1116, 1121 (Ind.2001).

■ The presumptive sentence for a Class A felony is thirty years, and the trial court is permitted to add up to twenty years for aggravating circumstances. *See* Ind.Code § 35–50–2–4. Here, the trial court identified a single aggravating factor, namely, Parker's criminal history, and no mitigating factors, and the court sentenced Parker to an enhanced term of thirty-eight years. Parker's criminal history consists of two felony convictions for criminal recklessness, a felony conviction for marijuana possession, and two misdemeanor convictions, one for battery and the other for marijuana possession. Parker's sole contention on appeal is that the trial court should not have given his criminal history any weight as an aggravator because none of his prior convictions were "relate[d] to the current offense."

■ It is well settled that a single aggravator is sufficient to support an enhanced sentence. *Deane v. State*, 759 N.E.2d 201, 205 (Ind.2001). And a history of criminal activity is sufficient in and of itself to impose an enhanced sentence. *Pruitt v. State*, 622 N.E.2d 469, 474 (Ind. 1993). Nonetheless, Parker relies on our supreme court's opinion in *Vasquez v. State*, 762 N.E.2d 92, 97 (Ind.2001), to support his contention that his criminal history is insufficiently related to the charged offense to warrant an enhanced sentence. In *Vasquez*, the defendant, who was convicted of murder, maintained that her criminal history, which consisted of two criminal conversion convictions and a conviction for criminal trespass, all misdemeanors, were "not so significant that they justif[ied] an additional 10 years as an aggravating circumstance." *Id.* Vasquez relied heavily on our supreme court's opinion in *Wooley v. State*, 716 N.E.2d 919, 929 n. 4 (Ind.1999), wherein the court noted, in dicta, that the "significance [of prior convictions] varies based on the gravity, nature and number of prior offenses as they relate to the current offense." *Vasquez*, 762 N.E.2d at 97. But our supreme court rejected Vasquez's reliance on *Wooley* and concluded that the trial court had properly determined that "the 'escalation of violence,' from disregard for property rights to disregard for life" warranted the enhanced sentence. *Id.*

Here, while none of Parker's previous convictions involved the possession or sale of cocaine, the trial court properly considered the number of prior offenses and the fact that two of them involved illegal drug possession. *See id.* (noting "[i]t is not unreasonable for a trial court to take into account the frequency of defendant's criminal activity.") We cannot say that Parker's sentence is manifestly unreasonable. The trial court did not abuse its discretion when it imposed an enhanced thirty-eight-year sentence.

Affirmed.

BAILEY, J., and ROBB, J., concur.